Filed 12/10/20  In re Marjorie E. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Marjorie E., a Person Coming Under the Juvenile Court Law. | B302052<br><br>(Los Angeles County Super. Ct. No. DK18837A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HECTOR R.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

James S. Lochead for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent, Los Angeles County Department of Children and Family Services.

\* \* \* \* \* \*

Nearly three years after asserting dependency jurisdiction over now-five-year-old Marjorie E., the juvenile court (1) denied a petition under Welfare and Institutions Code section 388[1] filed by Hector R. (father) to reinstate reunification services, and (2) terminated father's parental rights over Marjorie E.  Although father's opening brief on appeal is so lacking in content as to waive any errors on appeal, our review of these two orders reflects no error in any event.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Marjorie was born in May 2015 to father and Maria E. (mother).

On July 17, 2016, father punched mother in the face and body 20 to 25 times.  Father's barrage of punches started while mother was still holding Marjorie in her arms.  Both parents had been drinking wine.

### II.    Procedural Background

#### A.     *Assertion of dependency jurisdiction*

On August 17, 2016, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Marjorie.  In the operative First Amended Petition filed on

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

November 21, 2016,[2] the Department alleged that dependency jurisdiction was appropriate because (1) the history of domestic violence between mother and father placed Marjorie at substantial risk of serious physical harm (rendering dependency jurisdiction appropriate under section 300, subdivisions (a) and (b)(1)), (2) father's and mother's histories of substance abuse did the same (rendering dependency jurisdiction appropriate under section 300, subdivision (b)(1)).

On December 21, 2016, the juvenile court sustained all of the allegations in the First Amended Petition, removed Marjorie from her parents' custody, and ordered reunification services for each of the parents.

## B. *Reunification period*

The Department offered father reunification services for the next 21 months. During that time, father had regular monitored visits with Marjorie on a weekly basis, interspersed with some periods where father would not visit. Although the juvenile court in August 2017 authorized brief unmonitored visits, father did not avail himself of those visits. During his monitored visits, he and Marjorie were affectionate with one another and displayed a bond, although Marjorie thought of father as a "visitor" and called him by his first name. From February 2018 onward, Marjorie was living with Mr. and Mrs. S., with whom she developed a strong bond.

Also during the reunification period, father completed portions of his case plan—chiefly, a 16-week parenting class and a 52-week domestic violence course. He did not complete the

---

[2] There was a delay in the proceedings because mother absconded with Marjorie and was not located until October 31, 2016.

3

individual counseling portion.  Just a month before finishing his 52-week domestic violence course, father in February 2018 punched mother several times in the face, threw her to the ground and kicked her.  Father pled no contest to a misdemeanor count of battery (Pen. Code, § 242), was sentenced to three years of summary probation and 64 days of jail, and was enjoined from contacting mother for three years.  On August 15, 2018, the juvenile court terminated reunification services for father after finding him only in "partial" compliance with his case plan.

### C.    *Father's section 388 motion*

On March 29, 2019, father filed a motion under section 388 asking the court to reinstate reunification services and place Marjorie back in his custody on the ground that he had finished his individual counseling requirement and was voluntarily participating in further individual counseling.[3]  The trial court set the matter for a contested hearing, and the hearing occurred over four days in August and September 2019.  Father testified.  Among other things, he denied engaging in any domestic violence with mother, acknowledging only that he may have "possibly" "punched" mother "without realizing [it]."  Father also denied being subject to the previously issued criminal protective order.  The juvenile court found father "not credible," and that father's steadfast refusal to take responsibility for his past domestic violence meant that father continued to pose a risk of danger to Marjorie and that reinstated reunification services was not in Marjorie's best interests.

---

[3]    This was father's *second* section 388 motion.  He filed the first motion in August 2018, which the juvenile court summarily denied a few days later.  That motion is not before us.

4

**D.** *Termination of parental rights*

On September 13, 2019, which was the same day the juvenile court denied father's section 388 motion, the court also terminated his parental rights over Marjorie. The court found Marjorie to be adoptable, and rejected father's argument that the beneficial parent-child bond exception applied because father had no "parental [role]" in Marjorie's life and because the loving "bond" between father and Marjorie did not "outweigh[] the benefits of permanency the child will have with adoption and enjoying the very strong bond she has with [her] caregivers."

**E.** *Appeal*

Father filed this timely appeal.

## DISCUSSION

Father's notice of appeal encompasses the denial of his section 388 motion and the termination of his parental rights over Marjorie. His opening brief offers no argument whatsoever regarding why the denial of the section 388 was erroneous and offers only cursory argument as to why the trial court erred in rejecting his argument that the beneficial parent-child bond exception to termination of rights applies. On this basis, we would be well within our rights to treat father's appeal as waived. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.) However, the juvenile court's rulings are not erroneous in any event.

## I. Denial of Section 388 Motion

To establish entitlement to modification of a prior juvenile court order under section 388, the petitioning parent must show (1) "a change of circumstances," and (2) that the "modification of the prior order would be in the best interests of the minor child." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).) In evaluating the

5

petition, the juvenile court "may consider the entire factual and procedural history of the case." (*Mickel O.*, at p. 616.)

The burden of making each showing rests with the parent (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461 (*Angel B.*)), and that burden is particularly heavy where, as here, reunification services have been terminated. That is because, by that time, the focus of dependency proceedings has shifted to addressing the child's need for a "'stable [and] permanent'" home rather than the parent's desire for reunification. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419-420; cf. *In re William B.* (2008) 163 Cal.App.4th 1220, 1228 [focus is on reunification at the outset of a juvenile dependency case].) Thus, courts insist that the circumstances be *changed*, not merely *changing* because "stability for the child" is not "promote[d]" by "delaying" "the selection of a permanent home for a child" "[just] to see if a parent, who has repeatedly failed to unify with the child, might be able to reunify at some future point." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) And "stability and continuity" "assume[] an increasingly important role" in evaluating "the child's best interest." (*Angel B.*, at p. 464; *In re Marilyn H.* (1993) 5 Cal.4th 295, 310 ["after termination of reunification services," "continued care [by her current caregiver] is [presumptively] in the best interest of the child"].) We review the denial of a section 388 motion for an abuse of discretion. (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.)

The juvenile court did not abuse its discretion in denying father's section 388 motion. Even if father's completion of additional individual counseling is viewed as a changed circumstance, the court acted well within its discretion in determining that it was not in Marjorie's best interests to reinstate reunification services. By this time, Marjorie had been

6

living with her presumptive adoptive parents for 18 months and exhibited a strong bond toward them. Father, however, continued to be in denial about the very conduct that underlay the entire juvenile dependency proceeding—namely, his penchant for engaging in domestic violence with mother. Indeed, father's testimony denying the existence of the criminal protective order that maintained that he brutally assaulted mother on two occasions "without realizing it" shows a breathtaking lack of self-awareness and translates into a continued danger to Marjorie, particularly in light of his willingness to batter mother while she was holding Marjorie in her arms. (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) As between granting Marjorie the stability and permanency of living in a settled family unit with her presumptive adoptive parents and granting additional reunification services to a parent whose completion of 18 months of such services had failed to yield an iota of insight into why he needs to improve his parenting skills, the juvenile court did not abuse its discretion in opting for the former.

## II. Termination of Parental Rights

Once a juvenile court has terminated reunification services over a child within its dependency jurisdiction, it "shall terminate parental rights" once it finds, "'by clear and convincing evidence,'" "'that it is likely the [child] will be adopted'" within a reasonable time. (§ 366.26, subds. (a) & (c)(1); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250.) Thus, a juvenile court must terminate parental rights and order adoption unless the parent opposing termination proves that one of six statutory exceptions applies. (§ 366.26, subds. (c)(1) & (c)(1)(B); *In re I.W.* (2009) 180

7

Cal.App.4th 1517, 1527, overruled in part on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010.)

One of the six exceptions is the beneficial parent-child relationship exception. It applies when (1) "the parents have maintained regular visitation and contact with the child," and (2) "the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) Because "'[i]nteraction between natural parent[s] and [a] child will always confer some incidental benefit to the child,'" the second element of the exception requires a parent to show (1) "he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment between child and parent," and (2) "the child would suffer detriment if . . . her relationship with the parent were terminated." (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.) In assessing whether termination of parental rights would be detrimental to a child, courts look to "(1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467.) We review the first "factual issue" of whether there is a beneficial parent-child relationship for substantial evidence, and the discretionary decision of whether the child would suffer detriment for an abuse of discretion. (*In re J.C.* (2014) 226 Cal.App.4th 503, 530-531.)

The juvenile court did not abuse its discretion in declining to apply the beneficial parent-child relationship exception because father did not occupy a parental role in Marjorie's life. She has been out of his custody since she was 14 months old (when mother absconded with her); she is now five years old. Father also never progressed beyond monitored visits with her.

8

Marjorie herself viewed father more as a "visitor" than a parent. Father had the burden of establishing that he occupied a parental role (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343), and he failed to do so.

## III. Father's Arguments

In his brief, father argues that the juvenile court erred in rejecting his testimony as "not credible," that the court "did not weigh the evidence," that the court "did not apply the clear and convincing evidence" standard, and that it "abused its authority" in finding that he had a bond with Marjorie but did not occupy a parental role in her life.

These arguments lack merit. As to the first, it is not our job to re-weigh a juvenile court's credibility findings (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161), and even if it were, the juvenile court absolutely made the right call here. As to the second, the record reveals that the trial court examined (and thus, "weighed") the evidence in making both of its rulings. The clear and convincing evidence standard is irrelevant to a section 388 motion, and only applies to the Department's initial showing of adoptability in the termination-of-rights context (which father does not attack on appeal). And there is no inconsistency between the court's finding that father had a bond with Marjorie and that he still did not occupy a parental role; they are separate inquiries directed at different attributes of their relationship.

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ